# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION (DETROIT)

In re:                                          Chapter 7

LaJeff Lee-Percy Woodberry,                     Case No. 18-46856

     Debtor.                                   Hon. Phillip J. Shefferly
_____/

Andrew R. Vara,                                 Adversary Proceeding
United States Trustee,                          No. 18-4382-PJS

     Plaintiff,

v.

LaJeff Lee-Percy Woodberry,

     Defendant.
_____/

## OPINION GRANTING UNITED STATES TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT DENYING DEBTOR'S DISCHARGE

### Introduction

In this adversary proceeding, the United States Trustee ("UST") requests that the Court deny a discharge to a pro se debtor in a chapter 7 case. The UST has moved for a partial summary judgment. The debtor filed a response. The Court finds that there are no genuine issues of material fact in dispute and that the UST is

entitled to a partial summary judgment denying the debtor a discharge. The Court will grant the UST's motion.

**Jurisdiction**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and § 157(a).

**Facts**

The following facts are taken from the record in the debtor's bankruptcy case, this adversary proceeding and a related adversary proceeding. Except where otherwise noted, these facts are not in dispute.

The debtor in this case is LaJeff Lee-Percy Woodberry ("Debtor"), a retired police officer who also served in the United States military. The Debtor is married to Yumi Yoo Woodberry ("Yumi"). The Debtor, Yumi and their children live together at 18283 Muirland Street, Detroit, Michigan ("Muirland Property").

On May 9, 2018, following some unsuccessful state court litigation that resulted in a judgment against him, the Debtor filed a chapter 7 petition pro se. On May 23, 2018, the Debtor filed a schedule A/B that listed total assets of $4,125.00 and a schedule E/F that listed total liabilities of $111,373.62. The Debtor's schedule A/B stated that the Debtor had $75.00 in cash but did not have any bank accounts of any kind. On schedule I, the Debtor stated that he was unemployed but received "disability retirement" income of $3,020.42 each month. In his answer to

question number 5 on his statement of financial affairs, the Debtor stated that from January 1, 2018 through his bankruptcy petition date of May 9, 2018, the Debtor had received disability retirement payments totaling $15,102.10. That represented five of the monthly disability retirement payments listed on schedule I. But the Debtor also described in his answer to question number 5 two very large payments (collectively, the "Payments") that he had received in the year and a half before his bankruptcy. Specifically, the Debtor stated that in 2018, the Debtor had received a payment of $55,048.18 ("Annuity Payment") from "AXA Equi-VEST Variable Annuity Series." And the Debtor stated that in 2017, he had received a "Disability Payment" of $115,790.06 ("Disability Payment").

The first meeting of creditors was held on June 14, 2018. The transcript ("341 Transcript") (ECF No. 96, ex. 4) reflects that the chapter 7 trustee, Mark H. Shapiro ("Trustee") asked about the Payments. When the Trustee asked the Debtor what he did with the Annuity Payment, the Debtor said "I gave it to my wife, and she redid the — I think the kitchen and stuff like that — and bathrooms." (341 Transcript, p. 28, lines 19-20.) When the Trustee asked the Debtor what he did with the Disability Payment, the Debtor said "Same thing. Repaired the house." (341 Transcript, p. 29, line 14.) The Debtor went on to explain that "Well, like I said before, I had an issue with gambling, so a lot of times all money and everything,

- 3 -

I'd just give it — I had issues, and that's just been the practice, to give everything to my wife." (341 Transcript, p. 29, lines 22-25.)[1]

Following the Debtor's testimony at the first meeting of creditors regarding the Payments and other subjects, the Debtor's bankruptcy case has not gone smoothly. On August 2, 2018, the Trustee filed objections to the Debtor's exemptions. On the same day, the Trustee filed an adversary proceeding ("Trustee Adversary Proceeding") against Yumi to avoid and recover numerous fraudulent transfers alleged to have been made by the Debtor to Yumi, including a transfer of the Muirland Property for $1.00. On August 13, 2018, the UST filed a three-count complaint ("Complaint") in this adversary proceeding objecting to the Debtor's discharge. The Debtor represented himself in defending all this litigation and, to a large extent, spoke on behalf of Yumi in the Trustee Adversary Proceeding, as something of a translator because Yumi does not speak fluent English.

On November 9, 2018, the Court held a hearing both on the Trustee's objections to the Debtor's exemptions and on the Trustee's motion for summary judgment in the Trustee Adversary Proceeding. At the hearing, the Trustee, noting that the Debtor was acting pro se, and recognizing that there were many complex and difficult issues in the Debtor's bankruptcy case and in the two adversary

---

[1] On June 27, 2018, the Debtor filed an amended schedule A/B that added some personal property that brought the total value of the assets to $7,145.42 but still listed only $75.00 in cash and no bank accounts.

proceedings, suggested that the Court consider appointing a mediator. The Court considered it to be a good suggestion. After the Court explained the mediation process to the Debtor, the Debtor agreed to mediation. So did Yumi, the defendant in the Trustee Adversary Proceeding. The UST and the Debtor agreed to mediate the UST's adversary proceeding too.

With the parties' consent, the Court appointed a reputable, skillful and experienced mediator and held all the litigation, including this adversary proceeding, in abeyance. The Court allowed a long time for the mediation but, unfortunately, it was not successful. The Court then set new deadlines for discovery and motions as the parties now resumed this adversary proceeding. With the litigation heating up again, and having produced some rulings adverse to the Debtor, the Debtor moved to convert his bankruptcy case to chapter 13. However, the Court denied that motion, finding that the Debtor had not filed the motion in good faith.[2]

On August 20, 2019, the UST issued a subpoena ("Subpoena") (ECF No. 96, ex. 11) in this adversary proceeding requiring the Debtor to produce certain documents and to appear for a deposition. Among other documents, the Subpoena required the Debtor to produce "all records showing what you did with" the Payments, a "complete accounting" of the Payments, and "all records showing the

---

[2] The Court's decision is reported at 604 B.R. 336 (Bankr. E.D. Mich. 2019). It was affirmed by the United States District Court for the Eastern District of Michigan at Woodberry v. McDermott (In re Woodberry), No. 19-CV-12576, 2020 WL 1508604 (E.D. Mich. Mar. 30, 2020).

amount, source and disposition of all funds to remodel" the Muirland Property. The Debtor moved to quash the Subpoena. At a hearing on September 20, 2019, the Court denied the Debtor's motion and ordered the Debtor to comply with the Subpoena.

The Debtor's deposition took place on September 26, 2019. At the deposition, the Debtor produced only three documents: his 2017 federal tax return, his 2017 state tax return and a 21-paragraph affidavit ("Affidavit") (ECF No. 96, ex. 16), dated the same day as the deposition. Paragraphs 16 and 17 were the only two paragraphs in the Affidavit that referred at all to the Payments:

> 16. I explained to the Chapter 7 Trustee that 2017-2018 disability, retirement and pension payments and my pension were the only income I received during the period in question and that due to my gambling addiction, I gave all of the disability and pension money to my wife for the purpose of running our household.

> 17. I did not part with or intend to part or convey my interest in my disability payments and pension to my wife when I gave my wife the money for the purpose of running our household.

The transcript ("Dep. Transcript") (ECF No. 96, ex. 13) of the Debtor's deposition shows the Debtor's purpose in preparing the Affidavit. According to the Debtor, the Affidavit was the only document that he has regarding the Payments, he was submitting it as his accounting of the Payments, and he knows of no law that requires him to have any other documents. (Dep. Transcript, pp. 6-10.) When asked

- 6 -

specifically about the Subpoena's description of the documents he was required to bring to the deposition, the Debtor repeated that "Those are all the documents that I have," (Dep. Transcript, p. 13, line 21), and "Well, I know I don't have any records," (Dep. Transcript, p. 17, line 14), and "I've never had any records." (Dep. Transcript, p. 17, line 21.) When asked what he did with the Payments, the Debtor read from paragraphs 16 and 17 of the Affidavit and then stated in conclusory terms that "I give [sic] the money to my wife to take care of the household expenses." (Dep. Transcript, p. 15, lines 18-19.) He reiterated, "Well that was the accounting. I gave it to my wife. That's what I did with the funds; I got the money, and I gave it to my wife." (Dep. Transcript, p. 16, lines 13-15.)

After the Debtor's deposition, the Debtor, Yumi, the Trustee and the UST made another attempt to reach a global settlement of all the issues in the Debtor's bankruptcy case, the Trustee Adversary Proceeding and this adversary proceeding. Unfortunately, that was unsuccessful too. But this adversary proceeding still did not proceed to trial under the calendar created by the Court.

The COVID-19 public health crisis intervened to create a substantial delay. Eventually, as the Court became more accustomed to conducting trials remotely through the Webex video platform approved for use by the federal courts, the Court scheduled a conference with the UST and the Debtor to create a new schedule to bring this now long-running adversary proceeding to a conclusion. On August 31,

2020, the Court entered an order that scheduled the trial for September 15, 2020. Because the trial would have to be conducted remotely, the Court scheduled a training session for September 11, 2020 for the Court's IT personnel to train the UST and the Debtor on the Webex platform that would be used for the trial.

At the training session, the Debtor, still acting pro se, objected to holding any trial at all let alone a remote trial on the Webex platform. The Debtor argued that there was no reason to hold a trial in this adversary proceeding at all because the Court had already ruled against the Debtor when he tried to convert his bankruptcy case to chapter 13, any trial would be a "sham" because it would be "impossible" to give the Debtor a fair trial, and because the Trustee had refused to accept a cash settlement from the Debtor. The Debtor stated that the Court should just "dispense" with or "waive" this adversary proceeding. The Court explained that, however the Debtor may feel about his experiences in his bankruptcy case, he had voluntarily filed this chapter 7 case, the UST had filed this adversary proceeding objecting to the Debtor receiving a chapter 7 discharge, and the UST was entitled to have its day in court to prosecute this adversary proceeding. At that point, the UST stated that the UST believed the adversary proceeding could be resolved by a motion for summary judgment. The Court asked the Debtor, who was still insisting that a trial should not go forward, whether he had any objection to the UST now filing a motion for summary judgment. He stated that he did not. The Court then set a deadline for

- 8 -

the UST to file a motion for summary judgment and a deadline for the Debtor to respond.

On October 2, 2020, the UST filed a motion ("Motion") (ECF No. 96) for partial summary judgment, supported by 16 exhibits. The Motion requests summary judgment only on counts one and three of the Complaint. On October 22, 2020, the Debtor filed a response (ECF No. 98), and on October 23, 2020, the Debtor filed another response (ECF No. 99). The Debtor's two responses (collectively, the "Responses") are identical but are supported by different exhibits. Altogether, the Debtor attached eight exhibits to the Responses. After reviewing the Motion and the Responses, and all the exhibits attached to them, the Court concludes that the deliberative process will not be aided by oral arguments. The Court can, and will, decide the Motion based on the papers filed by the UST and the Debtor.

### Standard for Summary Judgment under Rule 56(a)

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence" to support its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 447 U.S. at 256).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989). "'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Brown v. City of Memphis, 921 F. Supp. 2d 865, 868 (W.D. Tenn. 2013) (quoting Anderson, 477 U.S. at 249-50). "The 'mere possibility' of a factual dispute is not enough." Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992)

- 10 -

(quoting <u>Gregg v. Allen-Bradley Co.</u>, 801 F.2d 859, 863 (6th Cir. 1986)). "The Court must assess 'whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Consumers Power Co. v. Amoco Prod. Co.</u>, 208 F.3d 212 (Table), 2000 WL 245438, at *2 (6th Cir. Feb. 24, 2000) (quoting <u>Anderson</u>, 477 U.S. at 250).

### Count I under § 727(a)(3)

The Motion first requests summary judgment on count I of the Complaint, brought under § 727(a)(3) of the Bankruptcy Code. That subsection provides for denial of discharge if "the debtor has . . . failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such . . . failure to act was justified under all the circumstances of the case[.]"

> To sustain an objection to a discharge under § 727(a)(3), the proof must establish: (1) either that the debtor failed to keep or preserve any recorded information, including books, documents, records and papers, or that the debtor or someone acting for him destroyed, mutilated, falsified, or concealed any recorded information including books, documents, records and papers; and (2) that as a result, it is impossible to ascertain the financial condition and material business transactions of the debtor. The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records. However, [o]nce a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor.

Solomon v. Barman (In re Barman), 244 B.R. 896, 900 (Bankr. E.D. Mich. 2000)

(internal quotation marks and citations omitted).

> The debtor's failure to keep adequate records must be

> justified under the circumstances. If the lack of records is not adequately explained, the debtor is not entitled to a discharge. If the nature and extent of the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, [ ]he must show more than that [ ]he did not comprehend the need for them. The justification must indicate that because of unusual circumstance, the debtor was absolved from the duty to maintain records.

> Courts routinely consider a variety of factors in determining whether the inadequacy of the debtor's records was justifiable. Such factors include the debtor's education, sophistication, business experience, size and complexity of the debtor's business, debtor's personal financial structure, and any special circumstances.

Wazeter v. Michigan National Bank (In re Wazeter), 209 B.R. 222, 230 (W.D. Mich.

1997) (internal quotation marks and citations omitted).

> The Wazeter court explained that § 727(a)(3)

> requires as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present. The purpose of the section is to give the trustee and creditors complete and accurate information concerning the status of the debtor's affairs and financial history and to test the completeness of the disclosure requirements to a discharge. [C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs.

Id. at 227 (internal quotation marks and citations omitted).

- 12 -

In determining the adequacy of records, courts generally have measured the quality of a debtor's records against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience.

Id. at 227 (internal quotation marks and citations omitted).

In the Motion, the UST argues that the Debtor failed to keep records regarding any of his income between January 1, 2017 and his bankruptcy petition date of May 9, 2018 and focuses on the sum of $185,940.34. That sum is made up of the following:

$55,048.18   — the Annuity Payment
$115,790.06 — the Disability Payment
$15,102.10  — the five monthly disability payments received
from January 1, 2018 through the petition
date.

For the first element of § 727(a)(3), the Trustee relies entirely on the Debtor's unequivocal and repeated statements under oath. In his testimony at the first meeting of creditors, in his deposition testimony and in the Affidavit, the Debtor repeatedly stated that he does not now have, nor has he ever had, any records regarding what he did with this $185,940.34. The Debtor repeatedly stated only that he gave these funds to his wife Yumi and that she used them to repair the Muirland Property, but readily admitted that neither he nor Yumi have any records as to how the funds were spent. The Debtor makes no attempt either in his Responses, or in the Affidavit, to refute any of his prior testimony. The Debtor still does not claim to have ever had

- 13 -

any records of what he or Yumi did with those funds. There is no genuine dispute over any material fact pertaining to the first element of § 727(a)(3): the Debtor failed to keep and preserve records regarding the $185,940.34.

Without any records regarding the $185,940.34, which the Debtor says is the Debtor's entire income received within one and a half years before the Debtor filed his bankruptcy petition, there is no way to ascertain the Debtor's financial condition or business transactions. According to the Debtor's amended schedule A/B, the Debtor has minimal assets of $7,145.42, only $75.00 of which is cash. The $185,940.34 does not represent some small portion of the Debtor's income. It represents *all* his income during the year and a half before he filed his bankruptcy petition. The Debtor's failure to keep and preserve records of these funds prevents parties in interest from having any idea whether the Debtor is being truthful when he says that he gave these funds to Yumi, or that Yumi spent them all on the Muirland Property.

The Debtor makes many arguments in the Responses that really have nothing to do with the UST's § 727(a)(3) objection but, read liberally, seem to boil down to three points regarding this second element of § 727(a)(3). First, the Debtor argues that he has only one judgment creditor and that the judgment creditor has "full knowledge" of the Debtor's financial condition. But that argument misses the point of this second element. Even if true, the fact that one of the Debtor's creditors has

- 14 -

full knowledge of the Debtor's financial condition is irrelevant to the question of whether the Debtor has kept and preserved records from which his financial condition may be ascertained.

Second, the Debtor argues that he has answered all the questions asked by the UST and the Trustee and provided documentation "to the extent that documentation was available." But answering questions asked by the Trustee and the UST, while undoubtedly one of the duties of a chapter 7 debtor, does not satisfy the requirement of § 727(a)(3) that a chapter 7 debtor must also keep and preserve *records* from which the debtor's financial condition may be ascertained.

Third, and somewhat similar to the Debtor's second argument, the Debtor argues that his contention that he is "unable to provide documentation" is a "legitimate answer" and the "UST has offered no evidence or reason for suspecting that the Debtor's answer is not true." The Debtor misconstrues § 727(a)(3). It is not about the truthfulness of a debtor's statements. It is about a debtor's duty to keep and preserve records from which the debtor's financial condition might be ascertained. The Debtor admits he kept and preserved no such records. There is no genuine dispute over any material fact pertaining to the second element of § 727(a)(3): as a result of the Debtor's failure to keep and preserve records regarding the $185,940.34, the Debtor's financial condition cannot be ascertained.

- 15 -

Even if a debtor has failed to keep and preserve records from which the debtor's financial condition might be ascertained, § 727(a)(3) provides a defense if the "failure" was "justified under all the circumstances of the case." As noted in Barman, once a debtor's records are determined to be inadequate — as is the case here — the burden is on the debtor to establish a justification. The Debtor must prove that a reasonably prudent debtor in like circumstances was absolved from the duty to maintain substantially accurate records over a reasonable time.

In the Responses, the Debtor makes two primary arguments to justify his failure to keep and preserve records of the $185,940.34. First, the Debtor argues that neither the UST nor the Court have any jurisdiction over the $185,940.34 because these funds represent pension, disability and retirement payments, all of which are exempt from the Debtor's bankruptcy estate. But § 727(a)(3)'s inquiry into a chapter 7 debtor's records is not limited to records of non-exempt assets. Whether or not the $185,940.34 is exempt from the Debtor's bankruptcy estate has nothing to do with the requirements of § 727(a)(3).

The Debtor's second argument is that he complied with a prior order that the Court entered early in the Debtor's chapter 7 case as part of a contested proceeding involving the Trustee's objections to the Debtor's claim of exemptions. Specifically, on September 7, 2018, the Court entered an order in that contested proceeding that required the Debtor to "provide the Trustee with whatever documentation he has in

his possession regarding the Pension Police & Fire and the Annuities Police & Fire by October 8, 2018." The Debtor claims that he timely complied with that order and that his compliance somehow now provides a justification for why he has not kept or preserved records regarding the $185,940.34. The Debtor conflates his duty to produce documentation under that order with his duty under § 727(a)(3) to keep or preserve recorded information from which his financial condition might be ascertained in order to obtain his chapter 7 discharge. Even assuming the Debtor did comply with the Court's September 7, 2018 order, that does not in any way, shape or form provide a justification for the Debtor's failure to keep and preserve records regarding the $185,940.34 from which his financial condition might be ascertained. There is no genuine dispute over any material fact regarding whether the Debtor was justified under all the circumstances of this case.

The Court previously observed in its opinion denying the Debtor's motion to convert to chapter 13 that the Debtor, a retired police officer who also served in the United States military, is very intelligent and able to vigorously argue to the Court. He has represented himself through complicated litigation and argued extensively on the record at numerous hearings. But he admits that he kept and preserved no records of what he did with $185,904.42 — which he says was all the income he received in the year and a half before he filed bankruptcy. A reasonably prudent debtor in similar circumstances would have maintained written records of the receipt

and disposition of this amount of money over this period of time. Without such records there is simply no way to ascertain the Debtor's financial condition. And the Debtor has not come forward with any facts or law to create any genuine issue over whether he was justified in not keeping and preserving such records. The Court finds that the UST is entitled to summary judgment on count I of the Complaint.

## Count III under § 727(a)(5)

The Motion also requests summary judgment on count III of the Complaint brought under § 727(a)(5) of the Bankruptcy Code. That subsection provides for denial of discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"

Section 727(a)(5) encompasses a two-part analysis. The moving party must establish a loss of assets. Then the burden shifts back to the debtor to "satisfactorily explain" that loss. A debtor's failure "to adequately explain the disappearance or shortage of assets is sufficient rationale for the bankruptcy court to deny discharge." Forbes v. Dixon (In re Dixon), 884 F.2d 578 (Table), 1989 WL 100068, at *1 (6th Cir. Aug. 30, 1989) (citing Dolin v. Northern Petrochemical Co. (In re Dolin), 799 F.2d 251, 253 (6th Cir. 1986)).

To be "satisfactory," the explanation must be reasonably supported by the evidence. "General unsubstantiated statements" are insufficient to meet that burden,

as are vague and uncorroborated explanations. In re Dixon, 1989 WL 100068, at *1

(citing In re Dolin, 799 F.2d at 253) (other citations omitted).

In analyzing the adequacy of a debtor's explanation, one court noted that

> [t]he word "satisfactorily" in subsection (5) is ambiguous. It could mean either that the debtor's disposition of assets must be proper or that the debtor's explanation must provide a reasonable accounting of what happened to the assets, whether proper or not. [The Sixth Circuit opinion in] Dolin does not entirely resolve this ambiguity. There is language in the opinion which could be cited to support either interpretation. However, the focus of the Dolin opinion is on the debtor's obligation to account for his disposition of his assets and this focus is borne out in the structure of section 727.

Sicherman v. Murphy (In re Murphy), 244 B.R. 418, 421 (Bankr. N.D. Ohio 2000)

(citing In re Dolin, 799 F.2d 251).

In sum, a debtor need not have acted reasonably in dissipating assets, but the

debtor must have an explanation that is reasonably supported by the evidence. As

with § 727(a)(3), "Courts have consistently held that unsubstantiated gambling

losses are a basis for denial of the discharge under § 727(a)(5)." Barman, 244 B.R.

at 901; see also In re Dolin, 799 F.2d at 253 (finding that the "general,

unsubstantiated statements about [the debtor's] lifestyle did not 'explain

satisfactorily' the disposition of more than $500,000 in the three years preceding his

bankruptcy").

In the Motion, the UST notes that the Debtor's schedule E/F shows a total of

$111,373.62 of liabilities but the Debtor's amended schedule A/B shows only

- 19 -

$7,145.42 of assets to satisfy those liabilities. The UST argues that the Debtor's statement of financial affairs discloses that he received income from January 1, 2017 through the date of the bankruptcy petition in the amount of $185,940.34, without even considering any income received by his wife Yumi during this time. The UST points out that in his testimony at the first meeting of creditors, in his deposition and in the Affidavit, the Debtor readily admitted that he gave these funds to his wife. As a result, these funds are not available to meet the Debtor's liabilities. In the Responses, the Debtor does not deny any of these facts. There is no genuine issue of material fact pertaining to the first element of § 727(a)(5): there is a loss of assets to meet the Debtor's liabilities.[3]

However, the Debtor argues that the UST is still not entitled to summary judgment under § 727(a)(5) because the Debtor does have a satisfactory explanation for the loss of the $185,940.34. In his testimony at the first meeting of creditors and at deposition, and in paragraph 16 of the Affidavit, the Debtor stated that he gave these funds to Yumi because he had a gambling addiction. In the Responses, the Debtor argues that Yumi used the funds to "remodel" the Muirland Property, and to

---

[3] In an opinion issued in the Trustee Adversary Proceeding on September 10, 2020, 621 B.R. 665 (Bankr. E.D. Mich. 2020), the Court found that the Debtor fraudulently transferred the Muirland Property, the Debtor's most valuable asset, to Yumi for $1.00 on February 16, 2018, just a few weeks before filing his chapter 7 case. However, the UST does not rely on that loss of assets either in count III of the Complaint or in the Motion.

"take care of the Debtor, his wife, and their six children prior to the entry of the money judgment."[4]

The UST does not dispute the Debtor's explanation, which, for purposes of deciding the Motion, the Court accepts as true. But the UST argues that this is not a *satisfactory* explanation as a matter of law for purposes of § 727(a)(5). The Court agrees. To be satisfactory, the explanation must be reasonably supported by the evidence. Basically, the Debtor's explanation comes down to a conclusory statement that he handed over $185,940.42 to Yumi because he had a gambling problem, and Yumi then spent the money. That's it. No documentation of any gambling problem. No description or documentation of any remodeling of the Muirland Property. No description or documentation of even a single expense paid by Yumi. No statement from Yumi at all, on anything. The Debtor's generalized, conclusory explanation, not backed up by *any* evidence much less reasonable evidence, is not satisfactory as a matter of law for purposes of § 727(a)(5). There is no genuine issue of material fact pertaining to the second element of § 727(a)(5): the Debtor does not have a satisfactory explanation of the loss of $185,940.42, representing his entire income in the year and a half before his bankruptcy, to meet

---

[4] As explained in the opinion denying the Debtor's motion to convert to chapter 13, one of the Debtor's creditors, Ramco-Gershenson Properties, L.P., had obtained a state court money judgment against the Debtor on June 17, 2017 and a separate order that awarded it attorney fees on February 15, 2018.

his liabilities.  The Court finds that the UST is entitled to summary judgment on count III of the Complaint.

## Conclusion

The Court fully appreciates that the Debtor is representing himself in this adversary proceeding.  And the Court has thoroughly read the Debtor's Responses, including exhibits, and considered all the arguments made by the Debtor in the Responses.  Many of those arguments have been made by the Debtor in other proceedings in his bankruptcy case and in the Trustee Adversary Proceeding.  In this opinion, the Court has specifically addressed only those arguments made by the Debtor that relate to the subject matter of the Motion in *this* adversary proceeding — counts I and III of the UST's Complaint objecting to the Debtor's discharge under § 727(a)(3) and (5).  The Court rejects all the other arguments made by the Debtor in the Responses because they do not have any merit or relevance to the Court's disposition of the Motion.

Section 727(a)(3) requires denial of discharge where there is a failure to keep or preserve records from which a debtor's financial condition might be ascertained, and there is no justification for such failure in the circumstances of the case.  Here, there is no genuine issue of material fact for the Court to try.  Similarly, § 727(a)(5) requires denial of discharge where there is a loss of assets to meet a debtor's liabilities and the debtor does not have a satisfactory explanation for such loss.  Here

- 22 -

again, there is no genuine issue of material fact for the Court to try. Neither § 727(a)(3) nor § 727(a)(5) require a demonstration of any bad intent by a debtor, and the Court makes no such finding and expresses no view in this opinion about the Debtor's intent.

The Court holds that the UST is entitled to partial summary judgment as requested by the Motion and as supported by the exhibits to the Motion. The Debtor's Responses and the exhibits attached to them do not provide any grounds to deny the Motion nor do they provide any grounds for the Court to dismiss the Complaint, as requested in the Responses. The Court will enter a separate order consistent with this opinion.

**Signed on December 29, 2020**



/s/ Phillip J. Shefferly

**Phillip J. Shefferly**
**United States Bankruptcy Judge**